UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

SHIVA STEIN,

                Plaintiff,

- against -

1-800-FLOWERS.COM, INC.,

                Defendant.

---

CV 16 - 6252

CIVIL ACTION NO: _____

MAUSKOPF, J.
MANN. M.J.

## COMPLAINT

Plaintiff, Shiva Stein, alleges, upon information and belief based upon, *inter alia*, the investigation made by and through her attorneys, except as to those allegations that pertain to the Plaintiff herself, which are alleged upon knowledge, as follows:

### NATURE OF THE ACTION

1. This is a direct stockholder action under Section 14(a) of the Securities Exchange Act of 1934, as amended, 15 U.S.C. § 78n(a) (the "Exchange Act") for injunctive relief.

2. On October 31, 2016, 1-800-Flowers.com, Inc. ("Flowers" or the "Company") furnished stockholders with its proxy statement for the upcoming December 13, 2016 annual meeting ("2016 Proxy Statement"). This proxy statement includes six Company proposals.

3. Proposal 1 asks stockholders to amend Flowers's certificate of incorporation to eliminate the Company's classified board structure. Currently, Flowers' has a board divided into three classes with members of each class holding office for staggered three-year terms. Proposal 1 seeks to eliminate this structure so that every director would hereafter stand for reelection every single year. Plaintiff, a stockholder in 1-800-Flowers.com, Inc. ("Flowers" or the

"Company"), seeks to require the Company to amend Proposal 1 to correct two problems with the current certificate of incorporation and Proposal 1.

    4. *First*, while the proposal seeks to eliminate the classified structure of Flowers' board, this Proposal is deficient because it fails to ask stockholders to remove (or modify) *all* of the language in the Company's certificate of incorporation that refers to a classified board. To wit, even if the stockholders vote in favor of Proposal 1, Article V ("Directors"), Section 1 ("Number") of the Certificate will *still* say: "Vacancies in the Board of Directors of the Corporation, however caused, and newly created directorships shall be filled by a vote of a majority of the directors then in office, whether or not a quorum, and any director so chosen ***shall hold office for a term of the class to which the director has been chosen***." (Emphasis added.) This language from the certificate should be changed by Proposal 1 so that the certificate does not become inconsistent and confusing should stockholders vote in favor of declassification.

    5. The *second* and more significant problem with this proposal is that the same section of the Certificate mentioned above – Article V, Section 1 – begins:

> The number of directors of the Corporation shall be such number, not less than four (4) nor more than fifteen (15), as shall be set forth from time to time in the bylaws, provided that no action shall be taken to decrease or increase the number of directors without the affirmative vote of at least 66.7% of the Total Voting Power.

    6. This provision thus requires that (1) the bylaws "set forth" the number of directors, and (2) that this number in the bylaws shall not be changed without the "affirmative vote of at least 66.7% of the Total Voting Power" of shareholders. But these requirements are completely contradicted by Flowers's bylaws.

7. Nowhere do Flowers's bylaws "set forth" "[t]he number directors of the Corporation." In addition, rather than requiring a stockholder vote the change the number of directors that constitute the board, Article IV ("Directors"), Section 1 of Flowers's bylaws states,

> The number of directors which shall constitute the whole Board shall be determined by resolution of the Board of Directors or by the stockholders at the annual meeting of the stockholders..."

8. Thus, the bylaws permit, but do not require, the stockholders to determine the number of directors. They also do not specifically require a 66.7% vote of stockholders to change the number of directors, suggesting that a lesser vote of stockholders would be sufficient.

9. In addition, in its past practice, Flowers has never asked for an "affirmative vote of at least 66.7% of the Total Voting Power" of shareholders to change the number of directors of the Company. Instead, since the certificate and bylaws were last amended in 1999, the board size has been changed at least thirteen times, but the stockholders were never asked to change the size of the board. In addition, at no time did during these seventeen years did the bylaws "set forth" the number of directors. Thus, the certificate has been continuously violated over the last seventeen years, and Flowers should ask the stockholders to amend it in Proposal 1.

10. According to the certificate – Article X ("Amendment of Certificate of Incorporation") – any change to Article V, Section 1 cannot be made without a stockholder vote of 66.7% of the Total Voting Power of the stockholders. Thus, this action requests that this Court require Flowers to request stockholders' approval of these changes to the certificate of incorporation or require Flowers's to begin complying with the certificate of incorporation.

3

Flowers should also state in Proposal 1 that it has not been in compliance with its certificate since 1999 so that stockholders understand the reason for this proposed change.

11. Plaintiff also seeks to require Flowers to comply with the disclosure rules promulgated by the United States Securities and Exchange Commission ("SEC") under the Exchange Act, including 17 C.F.R. § 240.14a-101 (Item 10(a)(1)) ("Item 10(a)(1)") with regard to a proposal it has put forward concerning a company compensation plan – Proposal 5.

12. Item 10(a)(1) requires:

Compensation Plans. If action is to be taken with respect to any plan pursuant to which cash or noncash compensation may be paid or distributed, furnish the following information:

(a) Plans subject to security holder action.

(1) Describe briefly the material features of the plan being acted upon, identify each class of persons who will be eligible to participate therein, indicate the approximate number of persons in each such class, and state the basis of such participation.

13. Proposal 5 in the 2016 Proxy Statement seeks stockholder "Re-Approval of the 2003 Long Term Incentive and Share Award Plan, as Amended and Restated October 22, 2009." Flowers has failed to provide the information required by Item 10(a)(1) with regard to this compensation plan. Plaintiff seeks an injunction requiring Flowers to provide this information.

## JURISDICTION AND VENUE

14. This Court has jurisdiction over the subject matter of this action pursuant to Section 27(a) of the Exchange Act.

15. In connection with the acts, omissions, conduct, and wrongs alleged herein, defendant used the mails and the means or instrumentalities of interstate commerce.

4

16. Venue is proper in this district because as allowed under Section 27(a) of the Exchange Act, 15 U.S.C. § 78aa(a), this district is where the violation at issue in this case occurred because the Plaintiff is a resident of this district.

## PARTIES

17. Plaintiff is, and has been continuously since June 2014, a holder of Flowers Class A common stock.

18. Flowers is a corporation organized under the laws of the State of Delaware. The Company's last fiscal year ended July 3, 2016. As of October 14, 2016, it had 34,873,169 shares of Class A common stock. The Company's Class A common stock is traded on the NASDAQ under the symbol "FLWS." Flowers is a leading provider of gourmet food and floral gifts.

## WRONGFUL ACTS AND OMISSIONS

19. 17 C.F.R. § 240.14a-9 provides that:

No solicitation subject to this regulation shall be made by means of any proxy statement ... containing any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading....

20. A line of precedent dating from the United States Supreme Court in the 19th Century and continuing to today holds that a company's certificate of incorporation and bylaws are contracts between and among the Company, the stockholders, its directors and its officers, and none of these parties is permitted to violate this contract. A stockholder can sue directly to enforce these documents.

21. Article V, Section 1 of Flowers's certificate has not changed since at least July 7, 1999, which was one month before the Company began publicly trading the Class A shares. This Section states:

5

> The number of directors of the Corporation shall be such number, not less than four (4) nor more than fifteen (15), as shall be set forth from time to time in the bylaws, provided that no action shall be taken to decrease or increase the number of directors without the affirmative vote of at least 66.7% of the Total Voting Power. Vacancies in the Board of Directors of the Corporation, however caused, and newly created directorships shall be filled by a vote of a majority of the directors then in office, whether or not a quorum, and any director so chosen shall hold office for a term of the class to which the director has been chosen.

22. Thus, this certificate gives stockholders the power to set the number of directors while also forbidding the board from unilaterally increasing or decreasing the size of the board without a 66.7% stockholder vote. It also requires that Flowers's bylaws "set forth" the number of directors that compose the board.

23. Despite this requirement, Flowers's bylaws have never "set forth" "[t]he number of directors of the Corporation...." Instead, Article IV ("Directors"), Section 1 of Flowers's bylaws states,

> The number of directors which shall constitute the whole Board shall be determined by resolution of the Board of Directors or by the stockholders at the annual meeting of the stockholders..."

These bylaws have remained unchanged since May 1999.

24. In addition, Article I, Section 1 of the bylaws states that "These By-Laws are subject to the Certificate of Incorporation of the Corporation, as amended and restated to date." This complies with black letter Delaware law, which holds that the certificate of incorporation is higher on the hierarchy of corporate governance documents than the bylaws. Thus, given any conflict between the bylaws and certificate, the requirements of the certificate dominate. Despite this, during the last seventeen years, Flowers has not complied with its certificate.

25. On August 3, 1999, Flowers Class A common stock began trading on the NASDAQ. As of this date, the Company represented in its SEC Form S-1/A that the board was composed of eight members. At this time, and at every time through the present day, the

6

Company's bylaws have always been in violation of the certificate of incorporation because the bylaws have never "set forth" "[t]he number of directors of the Corporation...." In addition, Flowers has changed its board size at least thirteen times without requesting stockholder approval of these changes.

26. First, on November 18, 2002, without asking stockholders to increase the size of the board in compliance with its certificate, Flowers announced that it had added Leonard J. Elmore to the board of directors, which increased the board's size to nine. The Company has never disclosed this violation of the certificate, and stockholders were not even asked to vote on whether Mr. Elmore should be on the board of directors until two years later -- 2004. Nor were stockholders ever asked to increase the size of the board to nine. Instead, the Company's 2002 proxy statement simply reported that "The Board of Directors currently consists of nine members ...."

27. Next, on November 7, 2003, Flowers filed an amended proxy statement announcing that Lawrence V. Calcano would not be seeking reelection to the board because "of his employer's policy with regard to board service." Mr. Calcano's removal from the board thus decreased the size of the board back to eight.

28. Again, on May 12, 2005, without asking stockholders to increase the size of the board in compliance with its certificate, Flowers announced that it had added Deven Sharma to the board of directors, which increased the board's size to nine for a second time. The Company has never disclosed this violation of the certificate, and stockholders were not even asked to vote on whether Mr. Sharma should be on the board of directors until two years later -- 2006. Nor were stockholders ever asked to increase the size of the board to nine. Instead, the Company's

7

2005 proxy statement simply reported that "The Board of Directors currently consists of nine members ...."

29. In this same October 31, 2005 proxy statement, the Company announced that current board member T. Guy Minetti would not be a nominee for reelection. The proxy statement did not explain the reason for this. Mr. Minetti's departure from the board thus decreased the size of the board back to eight.

30. Next, in the 2006 proxy statement, the Company stated that the board had voted to officially *decrease* its own size to seven, which is a violation of the certificate of incorporation's requirement that only a 66.7% vote of the shareholders could accomplish this. The board did this in response to Kevin J. O'Connor proposed retirement from the board. The 2006 proxy statement reported:

> Mr. O'Connor is retiring from the Board effective as of the date of the 2006 Annual Meeting. In connection with Mr. O'Connor's retirement, the Board has authorized a reduction in the size of the Board to seven members effective on December 7, 2006, as permitted by the Company's By-laws.

Despite the Company's continued failure to comply with the certificate, this announcement at least acknowledged – for the first time – the need for *someone* to set the number of directors that compose the board. As noted above, the bylaws did provide this power to the board, but the certificate vested this power in the stockholders, and any disagreement between those documents must be read to give predominance to the certificate according to Delaware law and the bylaws themselves, which are "subject to the Certificate of Incorporation of the Corporation...."

31. Ironically, despite having just attempted to reduce the size of the board through an ultra vires board action that failed to comply with the certificate, the very same day that Mr. O'Connor retired, the board appointed a new director – Lawrence V. Calcano – thus increasing

8

the size of the board back to eight. The announcement of Mr. Calcano's appointment did not state whether the board has attempted to increase its size back to eight.

32. Next, on March 16, 2007, Flowers announced that director Deven Sharma resigned due to his new job that "prohibits employees from serving on non-affiliated boards of directors." This again reduced the size of the board to seven.

33. Thereafter, on June 27, 2007, Flowers announced that it had appointed a new director -- James Cannavino – again increasing the size of the board to eight members.

34. And then, on March 19, 2009, without asking stockholders to increase the size of the board in compliance with its certificate, Flowers announced that it had added Larry Zarin to the board of directors, which increased the board's size to nine for a third time. The Company has never disclosed this violation of the certificate, and stockholders were not asked to vote on whether Mr. Zarin should be on the board of directors until two years later -- 2011. Instead, the Company's 2009 proxy statement simply reported that "The Board of Directors currently consists of nine members ...."

35. Next, on October 22, 2010, the Company announced in its proxy statement that Jan L. Murley would not stand for reelection "due to her loss of independent director status as a result of her service to the Company as Interim President, Consumer Floral Brand." Thus, the board was again composed of only eight members after the 2010 annual meeting.

36. On January 12, 2012, director Jeffrey C. Walker retired from the board and two new board members were added, which again increased the board's size to nine for a fourth time without asking stockholders to increase the size of the board in compliance with Flowers's certificate. The two new board members that were added are Eugene F. DeMark and Geralyn R. Breig. The Company has never disclosed this violation of the certificate, and stockholders were

9

not asked to vote on whether Ms. Breig should be on the board of directors until the following October 2012. For Mr. DeMark, stockholders were not asked to vote on his appointment until 2013. Instead, the Company's 2012 proxy statement simply reported that "The Board of Directors currently consists of nine members ...."

37. On December 13, 2013, John J. Conefry, Jr. retired from the board, decreasing the number of directors to eight.

38. On January 17, 2014, without asking stockholders to increase the size of the board in compliance with its certificate, Flowers announced that it had added Sean P. Hegarty to the board of directors, which increased the board's size to nine for a fifth time. The Company has never disclosed this violation of the certificate, and stockholders have not been asked to vote whether Mr. Hegarty should be on the board of directors until this year -- 2016. Instead, the Company's 2014 proxy statement simply reported that "The Board of Directors currently consists of nine members ...."

39. Finally, on June 17, 2016, without asking stockholders to increase the size of the board in compliance with its certificate, Flowers announced that it had added Celia R. Brown to the board of directors, which increased the board's size to ten. The Company has never disclosed this violation of the certificate, and stockholders were not asked to vote on whether Ms. Brown should be on the board of directors until this October.

40. Flowers has scheduled an annual shareholder meeting for December 13, 2016. It furnished the 2016 Proxy Statement on or about October 31, 2016 to solicit stockholder proxies for six Company proposals.

41. As stated above, Proposal 1 to the 2016 Proxy Statement requests that stockholders vote to amend the certificate of incorporation to declassify the board. Proposal 1

directs stockholders to "[t]he form of Charter Amendment, which is … set forth in Appendix A to this Proxy Statement."

    42.    Appendix A to the 2016 Proxy Statement is set forth below in its entirety:

AMENDMENT TO THIRD AMENDED AND RESTATED CERTIFICATE OF INCORPORATION

If approved by stockholders, Sections 2 and 3 of ARTICLE V of the Third Amended and Restated Certificate of Incorporation of 1-800-FLOWERS.COM, INC. would be amended as follows, with deletions indicated by strike-throughs and additions indicated by underlying:

    2.    ~~CLASSIFIED BOARD OF DIRECTORS.~~ <u>TERMS</u>.

~~The Board of Directors shall be and is divided into three classes: Class I, Class II and Class III, each of which shall be as nearly equal in number as possible.~~ Each director shall ~~serve~~<u>be elected</u> for a term ~~ending on the date~~ of <u>office that shall expire</u> at the ~~third~~<u>next</u> annual meeting of stockholders following ~~the annual meeting at which the director was elected; provided, however, that each initial director in Class I shall hold office until the annual meeting of stockholders in 2000; each initial director in Class II shall hold office until the annual meeting of stockholders in 2001; and each initial director in Class III shall hold office until the annual meeting of stockholders in 2002. Notwithstanding the foregoing provisions of this Article V,~~<u>his or her election, and</u> each director shall serve until his <u>or her</u> successor is duly elected and qualified or until his <u>or her</u> death, resignation or removal.

~~Subject to the provisions of this Article V, should the number of directors not be equally divisible by three, the excess director or directors shall be assigned to Classes I or II as follows: (i) if there shall be an excess of one directorship over a number equally divisible by three, such extra directorship shall be classified in Class I; and (ii) if there shall be an excess of two directorships over a number divisible by three, one shall be classified in Class I and the other in Class II.~~

~~In the event of any increase or decrease in the authorized number of directors, (1) each director than serving as such shall nevertheless continue as a director of the class of which he is a member until the expiration of his current term, or his earlier resignation, removal from office or death, and (2) the newly created or eliminated directorship resulting from such increase or decrease shall be appointed by the Board of Directors among the three classes of directors so as to maintain such classes as nearly equal as possible.~~

    3.    REMOVAL OF DIRECTORS.

11

> Notwithstanding any other provisions of this Third Amended and Restated Certificate of Incorporation or the bylaws of the Corporation, any director or the entire Board of Directors of the Corporation may be removed, at any time, ~~but only for~~with or without cause and only by the affirmative vote of ~~not less than 66.67%~~a majority of the Total Voting Power.

43. As demonstrated by Appendix A, this proposed amendment will only affect Sections 2 and 3 of Article V, which will leave intact the language in Section 1 of Article V that refers to the "term of the class to which the director has been chosen." In addition, this proposed amendment does nothing to eliminate or modify the language in the Section 1 of Article V that requires the bylaws to "set forth" the number of directors and prevents anyone except a "66.7% of the Total Voting Power" from increasing or decreasing this number.

44. Proposal 1 also says nothing about the previous seventeen years of Flowers's violations of the certificate of incorporation that are recounted above. Without a full understanding of the facts recounted above, Plaintiff and other stockholders are incapable of deciding whether they should enforce this certificate provision and reassert their power to prevent the board from increasing or decreasing its size without stockholder approval or whether they should grant directors a new power these directors have already arrogated.

45. In addition, SEC regulation 17 C.F.R. § 240.14a-3(a), requires that public companies may not solicit stockholder votes without furnishing a proxy statement "containing the information specified in Schedule 14A."

46. Item 10(a)(1) of Schedule 14A requires that "[i]f action is to be taken with respect to any plan pursuant to which cash or noncash compensation may be paid or distributed," the proxy statement soliciting this vote must "[d]escribe briefly the material features of the plan being acted upon, identify each class of persons who will be eligible to participate therein,

indicate the approximate number of persons in each such class, and state the basis of such participation."

47. Proposal 5 in the 2016 Proxy Statement, which seeks stockholder "Re-Approval of the 2003 Long Term Incentive and Share Award Plan, as Amended and Restated October 22, 2009," fails to disclose the classes of eligible participants in these plans, their approximate number, and the bases of their participation. Thus, this proposal does not comply with the SEC regulations.

## COUNT I
### (Exchange Act Violations of Proposal 1)

48. Paragraphs 1 through 47 state a direct claim for relief against the Company under Section 14(a) of the Exchange Act for acting in contravention of the "rules and regulations" prescribed by the SEC.

49. As a result of these actions, plaintiff will be injured, and she has no adequate remedy at law. She will suffer irreparable harm in the form of an uninformed vote on the bylaw amendment proposal if no action is taken to ameliorate this harm.

50. To ameliorate the injury, injunctive relief is required in the form of an amended proxy statement that provides full disclosure of the history of the Company's noncompliance with its certificate and proposes to amend this certificate to prevent future non-compliance and confusion.

51. Consequently, Flowers should be enjoined from presenting Proposal 1 for a stockholder vote at the December 13, 2016 annual meeting or certifying or otherwise accepting any vote cast, by proxy or in person, by or on behalf of any Flowers stockholder in connection with Proposal 1.

## COUNT II

### (Exchange Act Violations in Proposal 5)

52. Paragraphs 1 through 47 state a direct claim for relief against the Company under Section 14(a) of the Exchange Act for acting in contravention of the "rules and regulations" prescribed by the SEC.

53. As a result of these actions, plaintiff will be injured, and she has no adequate remedy at law. She will suffer irreparable harm in the form of an uninformed vote on the compensation plan proposal if no action is taken to ameliorate this harm.

54. To ameliorate the injury, injunctive relief is required in the form of an amended proxy statement that provides the information required by Item 10(a)(1) with regard to the Proposal 5.

55. Consequently, Flowers should be enjoined from presenting Proposal 5 for a stockholder vote at the December 13, 2016 annual meeting or certifying or otherwise accepting any vote cast, by proxy or in person, by or on behalf of any Flowers stockholder in connection with Proposal 5.

### RELIEF REQUESTED

**WHEREFORE**, Plaintiff requests the following relief:

A. A preliminary and permanent injunction, enjoining Flowers from

(i) certifying or otherwise accepting any vote cast, by proxy or in person, by or on behalf of any Flowers stockholder in connection with Proposal 1 in the 2016 Proxy Statement before the Company makes a full and timely disclosure that (1) it has not been in compliance with its certificate; and (2) amending this certificate to prevent future non-compliance and confusion ;

(ii) presenting Proposal 1 for a stockholder vote at the December 13, 2016 annual meeting without the full and timely disclosure discussed in paragraph (i) above;

(iii) continuing to violate the certificate by increasing or decreasing the size of the board without stockholder approval unless the full and timely disclosure discussed in paragraph (i) above is made and the stockholders vote in favor of Proposal 1;

(iv) certifying or otherwise accepting any vote cast, by proxy or in person, by or on behalf of any Flowers stockholder in connection with Proposal 5 in the 2016 Proxy Statement before the Company makes a full and timely disclosure in a manner consistent with Item 10(a)(1);

(v) presenting Proposal 5 for a stockholder vote at the December 13, 2016 annual meeting without the full and timely disclosure discussed in paragraph (iv) above;

B. Awarding such other and further relief as this Court deems just and proper.

Dated: November 9, 2016

                                              **BARRACK, RODOS & BACINE**

                                              By:   /s/ Michael A. Toomey
                                                    A. Arnold Gershon
                                                    Michael A. Toomey
                                                    11 Times Square, 640 8th Ave.
                                                    10th Floor
                                                    New York, NY 10036
                                                    Telephone: (212) 688-0782
                                                    Facsimile: (212) 688-0783

                                              *Attorneys for Shiva Stein*