UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
SHIVA STEIN,

                Plaintiff,                           **MEMORANDUM AND ORDER**
                                                                     16-CV-6252 (RRM) (RLM)

       -against-

1-800-FLOWERS.COM, INC.,

                Defendant.
-------------------------------------------------------------x
ROSLYNN R. MAUSKOPF, United States District Judge.

       Plaintiff Shiva Stein brings this motion for a preliminary injunction to enjoin a proxy vote on certain proposals in connection with defendant 1-800-Flowers.com, Inc.'s ("Flowers") annual shareholder meeting scheduled for December 13, 2016. The motion has been fully briefed, and on December 1, 2016, following oral argument, this Court denied Stein's motion for a preliminary injunction on the ground that she failed to demonstrate irreparable harm. The reasons for that ruling are set forth below.

## BACKGROUND

       Flowers, a corporation organized under the law of the State of Delaware, is a leading provider of flower gifts and gourmet food. (Compl. (Doc. No. 1) ¶ 18.) Stein has been a holder of Flowers' Class A common stock since June 2014. (*Id.* ¶ 17.) In anticipation of its annual shareholder meeting to be held on December 13, 2016, Flowers furnished its shareholders with a proxy statement seeking approval of various proposals. (*Id.* ¶ 2.)

       Stein alleges that Flowers violated Section 14(a) of the Securities Exchange Act, 15 U.S.C. § 78n(a) (the "Exchange Act"), and the SEC's Rule 14a–9, 17 C.F.R. § 240.14a–9, which prohibits false or misleading statements or omissions in proxy materials. Her claims center on

two of six proposals – Proposal 1 and Proposal 5 – that are set forth in the proxy statement.

**I.    Proposal 1**

Proposal 1 asks the shareholders to amend specified provisions of Flowers' certificate of incorporation (the "Certificate") to eliminate the company's classified board structure. (*Id.* ¶ 3.) As currently comprised, Flowers' board of directors is divided into three classes with members of each class holding office for staggered three-year terms. (*Id.*) Proposal 1 seeks to revise this structure so that each director would stand for reelection each year. (*Id.*)

Stein's complaint focuses on two issues with Proposal 1. First, Stein asserts that the proposal is deficient because it fails to ask shareholders to remove or modify language in the Certificate that, even with the passage of Proposal 1, would continue to refer to a "class" of directors. (*Id.* ¶ 4.) Second, Stein points to a provision in the Certificate that states:

> The number of directors of the Corporation shall be such number, not less than four (4) nor more than fifteen (15), as shall be set forth from time to time in the bylaws, provided that no action shall be taken to decrease or increase the number of directors without the affirmative vote of at least 66.7% of the Total Voting Power.

(*Id.* ¶ 5.) Stein argues that this provision requires that the bylaws set forth the specific number of directors, and that such number may not be changed without a 66.7% shareholder vote. (*Id.* ¶ 6.) However, Flowers' bylaws do not set forth the number of directors, a fact not in dispute. (*Id.*) Further, the bylaws contain a provision that allows the number of directors "to be determined by resolution of the Board of Directors or by stockholders at the annual meeting." (*Id.* ¶ 7.) Accordingly, Stein claims that the bylaws violate the Certificate because (i) they permit, but do not require, a shareholder vote to determine the number of directors, and (ii) they do not require a 66.7% vote. (*Id.* ¶ 8.) Finally, Stein alleges that Flowers has repeatedly changed the number of directors on the board over the last seventeen years – though never below four or above fifteen

– without ever asking for a 66.7% shareholder vote, thereby violating the Certificate requirements. (*Id.* ¶¶ 9, 26–39.)

Stein seeks a preliminary injunction to enjoin Flowers from presenting Proposal 1 for a shareholder vote at the December meeting and from accepting any votes in connection with Proposal 1 until Flowers discloses that it has not been in compliance with the Certificate and until Flowers amends the Certificate "to prevent future non-compliance and confusion." (*Id.* ¶ A(i)–(ii) at 14–15.)[1] Stein further seeks to enjoin Flowers from "continuing to violate the certificate by increasing or decreasing the size of the board without stockholder approval" until, after a full disclosure as discussed above, the shareholders vote in favor of Proposal 1. (*Id.* ¶ A(iii) at 15.)

## II. Proposal 5

Stein also seeks to enjoin a shareholder vote on Proposal 5. It seeks "Re-Approval of the 2003 Long Term Incentive and Share Award Plan, as Amended and Restated October 22, 2009" (the "Plan"), a compensation plan that was previously adopted by the board of directors and approved by shareholders. (*Id.* ¶ 13; Toomey Decl. (Doc. No. 5) Ex. 21 at 112.) The Plan first became effective on December 3, 2003 after a shareholder vote at Flowers' annual meeting. (Toomey Decl. Ex. 5 at 44; Sharkey Decl. (Doc. No. 15) Ex. 11 at 86.) The Plan was amended and re-approved by a shareholder vote at Flowers' 2009 annual meeting, and, most recently, re-approved by a shareholder vote at Flowers' 2011 annual meeting. (*See* Toomey Decl. Ex.14 at 73; Sharkey Decl. Ex. 11 at 65, 68.) Under the Plan, performance-based awards granted to certain executive officers may qualify as performance-based compensation, which are exempt from the income tax deductibility limitations under Section 162(m) of the Internal Revenue Code

---

[1] For ease of reference, all citations to Court documents will utilize ECF pagination.

of 1986. (Toomey Decl. Ex. 21 at 112.) The Plan's performance goal criteria requires periodic re-approval by shareholders; therefore, in Proposal 5, Flowers seeks shareholder re-approval of the Plan in order to continue qualifying performance-based awards as tax-exempt performance-based compensation. Flowers also seeks to make the following changes to the Plan: (i) extending the term of the Plan through September 14, 2026, and (ii) allowing the compensation committee to designate an officer to grant awards to employees and consultants not subject to Section 16 of the Exchange Act. (Toomey Decl. Ex. 21 at 112.)

Stein alleges that Flowers' disclosures in connection with Proposal 5 violate the Exchange Act, specifically Item 10(a)(1), 17 C.F.R. § 240.14a–101, (Compl. ¶ 11), which states:

> Compensation Plans. If action is to be taken with respect to any plan pursuant to which cash or noncash compensation may be paid or distributed, furnish the following information:
>
> (a) Plans subject to security holder action.
>
> (1) Describe briefly the material features of the plan being acted upon, identify each class of persons who will be eligible to participate therein, indicate the approximate number of persons in each such class, and state the basis of such participation.

17 C.F.R. § 240.14a–101. Stein argues that Flowers failed to disclose the classes of participants in these plans, their approximate number, and the basis of their participation. (Compl. ¶ 47.)

Stein seeks a preliminary injunction to enjoin Flowers from presenting Proposal 5 for a shareholder vote at the December meeting and from accepting any votes in connection with Proposal 5 until Flowers makes a full disclosure in a manner consistent with Item 10(a)(1). (*Id.* ¶ A(iv)–(v) at 15.)

## DISCUSSION

A plaintiff seeking a preliminary injunction must show: (1) a likelihood of success on the merits; (2) irreparable injury to the movant if the injunction is denied; (3) that the threatened

injury to the movant outweighs the injury to the party opposing the preliminary injunction; and (4) that the public interest would not be disserved by the injunction. *Salinger v. Colting*, 607 F.3d 68, 79–80 (2d Cir. 2010). A preliminary injunction is an "extraordinary and drastic remedy." *Grand River Enter. Six Nations, Ltd. v. Pryor*, 481 F.3d 60, 66 (2d Cir. 2007). The burden is on the movant to make a clear showing that such remedy should be granted. *Id.* Whether to grant a preliminary injunction rests within the sound discretion of the trial court. *See Moore v. Consolidated Edison Co. of N.Y., Inc.*, 409 F.3d 506, 511 (2d Cir. 2005) ("The district court has wide discretion in determining whether to grant a preliminary injunction.").

"Irreparable harm is the single most important prerequisite for the issuance of a preliminary injunction." *Rodriguez ex rel. Rodriguez v. DeBuono*, 175 F.3d 227, 233–34 (2d Cir. 1998); *see also* 11A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2948.1 (2d ed. 1995) ("Perhaps the single most important prerequisite for the issuance of a preliminary injunction is a demonstration that if it is not granted the applicant is likely to suffer irreparable harm before a decision on the merits can be rendered."). "Regardless of the strength of the movant's showing of the other three factors, a failure to demonstrate irreparable harm is dispositive." *Silberstein v. Aetna, Inc.*, No. 12-CV-8759 (AJN), 2014 WL 1388790, at *2 (S.D.N.Y. Apr. 9, 2014). Irreparable harm should be found only where a transaction would be "difficult to reverse if [it] were not enjoined from happening in the first place." *Id.* at *3. In other words, such harm exists where "the eggs will be difficult to unscramble." *Id.* In the context of proxy votes, irreparable harm is generally found only "in connection with major corporate transactions," such as mergers. *Id.*; *see, e.g.*, *MONY Grp., Inc. v. Highfields Capital Mgmt., L.P.*, 368 F.3d 138, 148 (2d Cir. 2004) (finding that defeat of a merger "could spell the loss of a business opportunity that (by its nature) can only exist at one

5

point in time and cannot be recovered or repaired with money damages"); *Am. Insured Mortg. Investors v. CRI, Inc.*, No. 90-CV-6630 (MBM), 1990 WL 192561, at *6 (S.D.N.Y. Nov. 26, 1990) (finding irreparable harm in the context of a tender offer because "once [such an] offer has been consummated, it becomes difficult and sometimes virtually impossible for a court to 'unscramble the eggs'"); *see also Bank of N.Y. Co. v. N.E. Bancorp, Inc.*, 9 F.3d 1065, 1067 (2d Cir. 1993) ("[W]here a merger has been consummated, restoration of the *status quo* may be impossible.").

For the reasons discussed below, Stein has failed to meet her burden of demonstrating that she is likely to suffer irreparable harm in the absence of a preliminary injunction. Therefore, even assuming that she is likely to succeed on the merits of her claims,[2] she is not entitled to the

---

[2] There are also issues with respect to Stein's likelihood of success on the merits. A plaintiff bringing an action pursuant to Section 14(a) based on alleged material misrepresentations or omissions in proxy materials must establish causation. *Fisher v. Kanas*, 467 F. Supp. 2d 275, 282 (E.D.N.Y. 2006). The causation requirement is met when the plaintiff "points to a material violation of the proxy rules in a situation where shareholder approval was necessary for a company to complete an allegedly unfavorable transaction." *Id.* at 283 (internal quotations marks and citation omitted). Several courts have found that a plaintiff who is a minority shareholder fails to show causation where there exists a single shareholder with sufficient voting power to accomplish the transaction without the plaintiff's vote. *See Virginia Bankshares, Inc. v. Sandberg*, 501 U.S. 1083, 1099–1102 (1991); *Grace v. Rosenstock*, 228 F.3d 40, 46–49 (2d Cir. 2000); *Litwin v. OceanFreight, Inc.*, 865 F. Supp. 2d 385, 396 (S.D.N.Y. 2011). Here, Flowers asserts that its Executive Chairman controls approximately 69.2% of Flowers' voting power by virtue of his Class B stock – enough to approve Proposals 1 and 5 without additional shareholder votes. (*See* Def.'s Mem. (Doc. No. 14) at 21; Pl.'s Reply Mem. at 12; Sharkey Decl. (Doc. No. 15) Ex. 11 at 61.) However, some courts have found that simply because "the causal nexus between the [transaction] and the proxy is absent when the minority stockholder's vote cannot affect the [transaction] decision" does not mean that a minority shareholder cannot succeed on a claim "if the vote nevertheless may result in a different sort of injury which full disclosure might have avoided." *Wilson v. Great Am. Industries, Inc.*, 979 F.2d 924, 931 (2d Cir. 1992). For example, in the context of a merger, the *Wilson* court found that a minority shareholder could bring a claim based on the forfeiture of state appraisal rights because that injury raised "a question separate from the effectuation of the merger." *Id.* at 932. Here, Stein has not shown how her vote "may result in a different sort of injury which full disclosure might have avoided," *id.* at 931, and thus has failed to demonstrate the requisite causation necessary to show a likelihood of success on the merits on a Section 14(a) claim.

Additionally, with respect to Proposal 1, the Court notes that the bulk of the issues raised in the complaint and on this motion relate to the number of directors on the board and Flowers' past non-compliance with the terms of the company's Certificate and bylaws in this regard. These issues relate to Section 1 of Article V of the Certificate, which deals with the number of board members, how that number is decided, and where it is set forth. Proposal 1, however, addresses Section 2 of Article V, which relates to the *structure* of the board. These two provisions in the Certificate are distinct. (Toomey Decl. Ex. 1 at 15.) Accordingly, it is difficult to understand how Stein's complaints are material with respect to Proposal 1.

extraordinary and drastic remedy she seeks.

Stein argues that without the preliminary injunction, she will suffer the following irreparable harms: (i) with respect to Proposals 1 and 5, the harm of being forced to cast an uninformed vote (Pl.'s Mem (Doc. No. 4) at 21; Compl. ¶¶ 49, 53); (ii) with respect to Proposal 5, the harm that Flowers will be permitted to begin awarding "supposedly tax-deductible compensation from the [Plan] without having secured a valid stockholder approval, actions that would be difficult, if not impossible, for the Court to unwind" (Pl.'s Mem. at 22); and (iii) with respect to Proposal 5, the harm that if the shareholders cast an uninformed vote, Proposal 5 will fail to comply with the Exchange Act, and "as a result, the tax benefits for Proposal 5 will be lost" (Pl.'s Reply Mem. at 12). For the reasons discussed below, Stein's arguments fail to give rise to irreparable harm.

**I. Casting an Uninformed Vote**

In the proxy context, the threat of an uninformed shareholder vote alone is inadequate to demonstrate irreparable harm for purposes of a preliminary injunction, particularly after the Supreme Court's decision in *eBay Inc. v. MercExchange L.L.C.*, 547 U.S. 388, 392–94 (2006). *See Silberstein*, 2014 WL 1388790, at *3–4 (rejecting plaintiffs argument that "the very act of holding an uninformed vote works a specific, concrete harm on shareholders"); *Masters v. Avanir Pharm., Inc.*, 996 F. Supp. 2d 872, 885 (C.D. Cal. 2014) ("In the context of motions to enjoin shareholder votes, federal courts in the wake of the Supreme Court's decision in [*eBay*] have rejected the *per se* rule advocated by Plaintiff – that denying stockholders their right to cast an informed vote constitutes irreparable harm." (internal quotation marks omitted)). The Court in *eBay* rejected a rule, previously recognized by some lower courts, that a plaintiff seeking a permanent injunction against patent infringement need only show that its patent was valid and

had been infringed. *eBay*, 547 U.S. at 392–94; *see also Salinger*, 607 F.3d at 77–78 & n.7 (holding that "*eBay* applies with equal force . . . to preliminary injunctions" and noting that the court saw "no reason [why] *eBay* would not apply with equal force to an injunction in *any* type of case"). The Court found that irreparable harm could not flow directly from a likelihood of success on the merits and required lower courts to apply traditional equitable principles when deciding whether to issue injunctive relief. *Silberstein*, 2014 WL 1388790, at *3. Thus, under *eBay*, the Court must "actually consider the injury the plaintiff will suffer if . . . she loses on the preliminary injunction but ultimately prevails on the merits." *Salinger*, 607 F.3d at 80. In short, in the post-*eBay* world, Stein cannot – as she attempts to do – rely on a presumption of irreparable harm flowing merely from alleged violations in the complaint. *Salinger*, 607 F.3d at 80; *Silberstein*, 2014 WL 1388790, at *3–4.

Stein errs by relying almost exclusively on legal authorities that pre-date the Supreme Court's decision in *eBay*. The sole post-*eBay* authority that Stein relies on in support of this argument is *Greenlight Capital, L.P. v. Apple, Inc.*, No. 13-CV-900 (RJS), 2013 WL 646547 (S.D.N.Y. Feb. 22, 2013). (*See* Pl.'s Mem. at 22.) There, the court preliminarily enjoined a shareholder vote on proposals that had been illegally "bundled" because it found that the vote would result in amendments that may not be able to be unwound, especially because they could trigger filings with multiple state agencies. *Id.* at *9. In other words, the *Greenlight* court found an actual injury – the inability to unwind a complicated transaction – beyond the harm flowing directly from a likelihood of success on the merits. As discussed in Section II, *infra*, Stein has articulated no similar complications here and has merely stated in conclusory fashion that the

approval of Proposal 5 would be difficult to unwind.

## II. Unwinding Proposal 5

Similarly, Stein has failed to show irreparable harm through her arguments relating specifically to Proposal 5. First, it is important to note what Stein's complaint does *not* involve. Stein is not attempting to enjoin a merger or other corporate activity, which would require the Court to "unscramble the eggs" if preliminary injunctive relief were withheld. Instead, as discussed above, the proxy items at issue here do not involve complex business transactions, but rather administrative matters relating to tax issues and board structure. If Stein ultimately prevails, the Court can void the shareholders' vote on the relevant voting items and order that those voting items be resubmitted to the shareholders. *Deborah G. Mallow IRA SEP Inv. Plan v. McClendon*, No. 12-CV-436 (VML), 2012 WL 2036748, at *3 (W.D. Okl. June 6, 2012) (collecting cases). To prove irreparable harm, Stein relies on conclusory assertions that it "would be difficult, if not impossible, for the Court to unwind" the outcome of a vote on Proposal 5. She fails to explain why this is so.[3] Moreover, other courts have denied preliminary injunctive relief relating to proxy votes on similar incentive plans, finding that such votes can easily be voided and resubmitted to shareholders without difficulty. *See, e.g.*, *Masters*, 996 F. Supp. 2d at 885–86 (denying a preliminary injunction with respect to a shareholder vote on an incentive plan involving tax implications under Section 162(m) because, if necessary, the vote could be voided); *Deborah G. Mallow IRA*, 2012 WL 2036748, at *3 (denying a preliminary injunction seeking to enjoin a proxy vote on incentive plans because plaintiffs would have an

---

[3] Indeed, at oral argument, Stein's counsel noted that amended returns and other restatements could be filed with the IRS, suggesting a rather routine mechanism to rectify any improper tax treatment of the compensation payments at issue in Proposal 5.

adequate remedy if the injunction was denied and they ultimately won on the merits).

**III.     Loss of Tax Benefits**

Finally, Stein argues that if Proposal 5 violates the Exchange Act, "the tax benefits for Proposal 5 will be lost." (Pl.'s Reply Mem. at 12.) In fact, the purpose of the vote on Proposal 5 is to maintain tax advantages that Flowers has consistently gained from the Plan since its inception in 2003. Thus, the injunctive relief Stein seeks would actually disrupt the status quo, in which case the Plan will expire and the tax advantages to the company – and the collateral benefits to its shareholders – will be lost. *See Silberstein*, 2014 WL 1388790, at *6 ("[I]n the typical Rule 14a–9 case, the plaintiff seeks a preliminary injunction against a shareholder vote that, if successful, will result in some undesirable change to the status quo.").

## CONCLUSION

For the foregoing reasons, Stein has failed to sufficiently demonstrate that she will suffer irreparable harm without the relief she seeks. Accordingly, Stein's motion for a preliminary injunction is denied.

SO ORDERED.

Dated: Brooklyn, New York　　　　　　　　　*Roslynn R. Mauskopf*
　　　　December 2, 2016

　　　　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　　　　ROSLYNN R. MAUSKOPF
　　　　　　　　　　　　　　　　　　　　　United States District Judge